Paula WILLIAMS, on behalf of herself and of others similarly situated,

v.

NATIONAL SCHOOL OF HEALTH TECHNOLOGY, INC., et al.

Civ. A. No. 92–2536.

United States District Court, E.D. Pennsylvania.

Oct. 22, 1993.

---

Irv Ackelsberg, Community Legal Services, Inc., Philadelphia, PA, for plaintiff.

John C. Fenningham, Thomas P. Stevens, Corr, Stevens & Fenningham, Trevose, PA, for Diane Holland and Ilsa Lobel.

Joan K. Garner, U.S. Atty.'s Office, Philadelphia, PA, for Secretary of U.S. Dept. of Educ.

Sean W. Colligan, Mary Nell McGarity Clark, John W. Showalter, J. Christopher Kohn, U.S. Dept. of Justice, Civ. Div., Fred Marinucci, Natalia Leons, U.S. Dept. of Educ., for the U.S. Dept. of Educ.

Ronald J. Shaffer, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for United Student Aid Funds.

Lowell S. Thomas, Jr., Saul, Ewing, Remick & Saul, Philadelphia, PA, for F.D.I.C.

## MEMORANDUM

BARTLE, District Judge.

This is a putative class action brought by plaintiff Paula Williams, on behalf of herself and other students who were allegedly victimized by a now closed proprietary trade school known as National School of Health Technology, Inc. ("National").[1] Plaintiff seeks declaratory relief against the United States Secretary of Education ("Secretary") and declaratory and injunctive relief against United Student Aid Funds ("USAF") to prevent the enforcement of her federally guaranteed student loans.[2] Before the court are the motions of the Secretary and USAF to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. When considering such a motion, the court must accept as true all allegations in the complaint, and all reasonable inferences which can be deduced therefrom. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989).

Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. § 1070 et seq., and the regulations promulgated thereunder,[3] are intended to address the need for financial assistance of students seeking higher education. The HEA provides various grant and loan programs including the Guaranteed Student Loan ("GSL") Program which is at issue here. The Secretary administers the GSL program and serves as the ultimate guarantor of GSL's. Eligible lenders, such as banks, issue guaranteed student loans to the students. 20 U.S.C. § 1085(d). A "guaranty agency" then guarantees to the lenders that the loans will be paid. A guaranty agency may be a state agency or private non-profit agency such as USAF, which has a reinsurance agreement with the Secretary. 20 U.S.C. §§ 1085(j), 1078(c). In the event of default, the guaranty agency pays the holder of the loan pursuant to the terms of the guaranty. The guaranty agency then obtains reimbursement pursuant to its reinsurance agreement with

---

1. No class has as yet been certified.

2. Plaintiff had also sought declaratory judgment against the Federal Deposit Insurance Corp. ("FDIC") as receiver for Meritor Savings Bank/PSFS ("Meritor/PSFS"), which made the loans in question to plaintiff. The FDIC has been dismissed from the case by agreement of the parties.

Plaintiff has also withdrawn her claims for estoppel and for injunctive relief against the Secretary.

In Count I of the complaint, plaintiff had sought damages for herself individually against the school and various principals of the school. These parties have represented to the court that this aspect of the case has been settled.

3. Regulations relevant to this opinion can be found at 34 C.F.R., Parts 600, 668, and 682.

the Secretary for some or all of the funds which it has expended in paying the default claim to the holder of the note. The Secretary pays the guaranty agency a fee for administering the program, advances funds to the guaranty agency to purchase defaulted loans from the lenders, and uses the agency as a collection agent. 20 U.S.C. § 1078(c), 34 C.F.R. § 682.400, et seq. (410(b)(4)). To obtain reimbursement from the Secretary, the guaranty agency must have attempted to collect, with due diligence, a defaulted loan. 20 U.S.C. § 1078(c)(2); 34 C.F.R. §§ 682.200, 682.410(b).

In order for a student who lacks a high school diploma or its equivalent to be eligible for a guaranteed student loan, the school must certify him or her as having the "ability to benefit" from the education offered. 34 C.F.R. §§ 600.11, 668.7(b). The regulations require that, prior to admission, an "ability to benefit" student must demonstrate aptitude on:

> a nationally recognized, standardized, or industry-developed test, subject to criteria developed by the institution's nationally recognized accrediting agency or association, that measures the student's aptitude to complete successfully the educational program to which he or she has applied....

34 C.F.R. § 668.7(b)(1).

The regulations also require participating schools to maintain a "fair and equitable" refund policy for students who withdraw or are terminated. In the case of schools with default rates over 30 percent, the refunds must be based on a "pro rata" formula. 34 C.F.R. § 682.606.

According to the complaint, plaintiff, Paula Williams, is a 45 year old woman with an eleventh grade education. She enrolled in National's Medical Assistant Program in February, 1989, after passing a "pre-admission" test on her second try. The school arranged for and obtained a GSL from Meritor/PSFS on her behalf. Ms. Williams found that she was unable to do the work required in the program and withdrew from the school after one week. She claims that National induced her to re-enroll a few months later and, as before, the school processed a loan application on her behalf and obtained a second GSL. Plaintiff again withdrew after a few days, having amassed approximately $2,700 in loan obligations owing to Meritor/PSFS and guaranteed by USAF. She alleges that her loans are unenforceable because she was fraudulently certified as having the ability to benefit from the education provided by National in violation of 34 C.F.R. §§ 600.11 and 668.7(b), and state law, and because National failed to maintain a "fair and equitable" refund policy in violation of 34 C.F.R. § 682.606 and state law.

## THERE IS NO PRIVATE CLAIM FOR RELIEF UNDER THE HEA

■ Both the Secretary and the USAF move to dismiss plaintiff's claims arising under the HEA, asserting that the HEA does not afford students a private cause of action. Plaintiff concedes that the statute does not afford an express right of action, but contends that the court should find an implied right to enforce the discharge provisions of the 1992 amendments to that statute. Specifically, plaintiff relies on 20 U.S.C. § 1087(c)(1) which provides:

> If a student borrower who received, on or after January 1, 1986, a loan made, insured, or guaranteed under this part is unable to complete the program in which the borrower is enrolled due to the closure of the institution or if such student's eligibility to borrow under this part was falsely certified by the eligible institution, then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees) by repaying the amount owed on the loan and shall subsequently pursue any claim available to such borrower against the institution and its affiliates and principals....

The statute further provides that students entitled to this discharge "shall not be precluded from receiving additional grants, loans, or work assistance under this ... [title]," and requires the Secretary to report the discharge to credit bureaus. 20 U.S.C. §§ 1087(c)(4) and (5).

■ The Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45

L.Ed.2d 26 (1975) articulated the following four-part test to determine whether Congress intended to afford an implied right of action in a given statute: (1) whether the plaintiffs constitute "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create a remedy or to deny one"; (3) whether inferring a private right of action would be "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action "is traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law." These factors are merely a means for determining what Congress intended. The Supreme Court has emphasized that unless congressional intent to create a private cause of action "can be inferred from the language of the statute, the statutory structure or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

■ It is uncontested that the loan discharge provisions were enacted for the benefit of students such as the plaintiff. That conclusion alone, however, is not sufficient to imply a right of action to enforce the provisions.[4] Where a statute provides an administrative enforcement mechanism, it is presumed that Congress did not mean to create a private right of action. *See Karahalios v. National Federation of Federal Employees, Local 1263,* 489 U.S. 527, 533, 109 S.Ct. 1282, 1287, 103 L.Ed.2d 539 (1989). In the 1992 amendments to the HEA, Congress created a duty on the part of the Secretary to discharge the student loans of falsely certified

students. 20 U.S.C. § 1087(c). Congress also directed the Secretary to promulgate regulations implementing the amendments. 20 U.S.C. § 1098a. At oral argument, counsel for the Secretary assured the court that final regulations are to be issued by February 11, 1994.[5] Furthermore, the amendments prohibit the Secretary from making any new loan guarantees if final regulations are not issued by June 30, 1994. 20 U.S.C. § 1071. Although no enforcement mechanism currently exists, Congress manifested its intention that the provisions be enforced administratively by directing the Secretary to promulgate regulations to implement the amendments. An implied right of action would conflict with the enforcement powers of the Secretary and would therefore be inconsistent with the overall statutory scheme. *See L'Ggrke v. Benkula,* 966 F.2d 1346, 1348 (10th Cir.1992).

■ Plaintiff concedes that if there were an adequate administrative enforcement mechanism in place, an implied private cause of action would be inappropriate. She contends, however, that because such regulations have not yet been promulgated, a private cause of action would not currently conflict with the statutory scheme. Plaintiff further contends that a private right of action is necessary because students who are entitled to have their loans discharged under the 1992 amendments are subject to ongoing enforcement of their loans, including wage garnishment, interception of any tax refunds, and preclusion from obtaining new loans to pursue legitimate education.

■■ Although the court has great sympathy with the plight of these students, it may not allow an interim right of action to enforce a statute simply because an agency has not yet promulgated regulations. Again, the issue is whether Congress intended to

---

4. Nearly all courts which have considered the question of whether various provisions of the HEA confer a private right of action have concluded that they do not. *See e.g. L'Ggrke v. Benkula,* 966 F.2d 1346 (10th Cir.1992); *Veal v. First Amer. Sav. Bank,* 914 F.2d 909 (7th Cir. 1990); *Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1256–59 (D.D.C.1992).

5. 20 U.S.C. § 1098a(b) provides for negotiated rulemaking to be completed within a 240 day schedule. According to that schedule, regulations were to have been issued by March 23, 1993. However, that statute incorporates § 431(g) of the General Education Provisions Act which permits the Secretary to revise the rulemaking schedule if unforeseen circumstances prevent him from issuing regulations within the 240 days. 20 U.S.C. § 1232(g).

provide this interim form of relief. *Northwest Airlines Inc.,* 451 U.S. at 94, 101 S.Ct. at 1582. We find no such intent. The fact that regulations have not yet been promulgated has no bearing on the intent of Congress in enacting the amendment. Some delay between the enactment of legislation and its enforcement is inevitable whenever Congress creates a scheme which calls for the issuance of regulations. The correct mechanism for bringing a claim of unreasonable delay in promulgating regulations is the Administrative Procedure Act ("APA") which specifically provides that a court may "compel agency action unreasonably delayed." 5 U.S.C. § 706(1). Unlawful delay in agency rulemaking may be reviewed under this section. *United Steel Workers of Amer. AFL–CIO–CLC v. Rubber Mfrs. Ass'n,* 783 F.2d 1117 (D.C.Cir.1986); *Public Citizen Health Research Group v. Com'r, Food & Drug Admin.,* 740 F.2d 21 (D.C.Cir.1984). The complaint does not assert a claim under the APA. Furthermore, while the court has difficulty understanding why the Secretary has not moved with greater celerity, in light of the approaching February 11, 1994 and June 30, 1994 deadlines for the promulgation of regulations, it would be premature to consider a claim for unreasonable delay at this time.

The cases cited by plaintiff do not support a private cause of action here. In *Student Coalition for Peace v. Lower Merion School,* 776 F.2d 431 (3d Cir.1985), the Court found that there is a private right of action to enforce the Equal Access Act, 20 U.S.C. § 4071 et seq., based in large part on the fact that the Act itself provided no alternative method of enforcement. In *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) the Supreme Court found the rent ceiling provisions of the Brooke Amendment of the United States Housing Act of 1937 were enforceable via a private action under 42 U.S.C. § 1983. The holding was based on that statute's particular language and history. Specifically, the court determined that the statute conferred on plaintiffs a direct right to a reasonable rent, that there was no evidence of congressional intent to vest enforcement power exclusively in the Department of Housing and Urban Development ("HUD"), and that existing state and administrative enforcement mechanisms were inadequate to raise an inference that Congress meant to foreclose § 1983 cause of action.

■ In contrast, in the present case, the statute does not confer a direct right on the students. Instead it creates a duty on the part of the Secretary to discharge certain loans, indicating that Congress intended to vest enforcement of the 1992 amendments with the Secretary. Plaintiff suggests that the regulations proposed by the Secretary will not be adequate to protect plaintiff's rights. However, this court does not have the power to review preliminary drafts of regulations. Pursuant to the Administrative Procedure Act, the Court may review only "[a]gency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court" (emphasis added). 5 U.S.C. § 704. Regulations which are not yet issued in final form do not constitute "final action" within the meaning of this section. *See e.g., Public Citizen Health Research v. Com'r. Food & Drug,* 740 F.2d 21 (D.C.Cir.1984). *National Wildlife Federation v. Goldschmidt,* 504 F.Supp. 314, 326 (D.Conn.1980), *aff'd* 677 F.2d 259 (2d Cir. 1982). In *Public Citizen Health Research,* the court explained that while the finality requirement may not accommodate the interests of those whom regulations are meant to protect,

> review of an agency's tentative position on a substantive issue in an ongoing agency proceeding is as a general matter antithetical to basic notions of the proper allocation of functions in our administrative state.

740 F.2d at 32. Plaintiff's concerns about the adequacy of the regulations will have to await their promulgation in final form. Accordingly, plaintiff's claim under the HEA will be dismissed.

## PLAINTIFF MAY NOT ENFORCE THE HEA VIA A DECLARATORY JUDGMENT ACTION

■ Plaintiff asserts that even if there is no private right of action under the HEA,

she can nonetheless proceed in an action under the Declaratory Judgment Act, which provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). This Act allows a party to assert, as the basis for an original action, a legal theory which could have been asserted defensively had the position of the parties been reversed. *Crown Cork & Seal Co. v. Pa. Human Relations Com'n*, 463 F.Supp. 120, 124 (E.D.Pa.1979). Plaintiff is in essence arguing that the discharge provision in the 1992 amendments could be used by a student as a defense to a collection action. ■ Plaintiff has cited no support for the theory that the discharge provision could be used defensively in this manner. However, even assuming that plaintiff's position is correct, declaratory judgment is nonetheless inappropriate. As stated above, there is no private right of action under the HEA. Allowing plaintiffs to proceed in a declaratory judgment action with the HEA as the source of the underlying substantive law is tantamount to allowing a private cause of action. The Declaratory Judgment Act cannot be used to circumvent the enforcement mechanism which Congress established. *See Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291 (1952). As explained above, in this case Congress has expressed its intention that the statute be enforced administratively. Declaratory judgment "will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal...." *Wycoff*,

344 U.S. at 73, 73 S.Ct. at 241. A declaratory judgment action would require this court to interpret provisions of the 1992 amendments which are currently the subject of rulemaking proceedings, thus interfering with the ability of the Secretary to construe the statute in the first instance. As the Supreme Court made clear in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) courts must avoid

> entangling themselves in abstract disagreements over administrative policies, and ... protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way.

*Id.*, 387 U.S. at 147, 87 S.Ct. at 1515.

## PLAINTIFF HAS NOT STATED A CLAIM UNDER STATE LAW

■ Plaintiff also alleges that she would have various defenses under Pennsylvania law to an enforcement action by the school ("school-based defenses")[6] and that under Pennsylvania law she may assert these defenses against the lender, the guaranty agency and the Secretary in a declaratory judgment action.[7] Specifically, plaintiff contends that she may preserve her school-based defenses against holders of her loans pursuant to the Pennsylvania Goods and Services Installment Sales Act ("GSISA"). 69 Pa.Stat.Ann. § 1101, et seq. The GSISA provides protection for purchasers of goods and services through installment sales contracts defined as, "any contract for a retail installment sale between a buyer and a seller which provides for repayment in installments ...." 69 Pa.Stat.Ann. § 1201(6). Among the

6. Plaintiff has alleged that she would be able to defend against an action by the school based on fraud and misrepresentation and that the actions of the school would constitute an "unfair and deceptive practice" under Pennsylvania's Unfair Trade Practices and Consumer Protection Law 73 Pa.Stat.Ann. § 201–1 et seq.

7. Counsel for the Secretary represented at oral argument that the Department of Education agrees to be bound by applicable state law defenses which are not preempted by the HEA.

The Higher Education Act does not generally preempt state law remedies. *Jackson v. Culinary School of Washington*, 788 F.Supp. 1233 (D.D.C. 1992), *Tipton v. Secretary of Educ.*, 768 F.Supp. 540 (D.W.Va.1991). However, state law is preempted to the extent that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

protections provided by this Act is a provision preserving defenses arising out of the original sales transaction against subsequent assignees. 69 Pa.Stat.Ann. § 1402. Therefore, if plaintiff's student loan transactions fit within the GSISA, she may assert her school-based defenses against the lender and any subsequent holder of her loans.

On their face, the student loans at issue are not installment sales contracts. Plaintiff executed an enrollment agreement with the school and separate student loans with the bank Meritor/PSFS. However, there is some precedent under Pennsylvania law for the proposition that where a sufficiently close connection exists between the seller of goods and services and the lender, the loan and sale should be considered one transaction for the purchase of goods and services on credit. Under such circumstances, the entire transaction would fall within the ambit of the GSISA. *Iron and Glass Bank v. Franz*, 9 Pa.D. & C.3d 419, 422 (C.P.Allegheny Cty.1978).

*Iron and Glass Bank* involved a suit by plaintiff bank to collect on loans furnished to defendants to enable them to purchase a health spa membership. Although the transaction was structured as a personal loan between the bank and the defendant, the court held that the GSISA should apply, in light of the fact that the spa arranged the loan, and that the proceeds from the loan could be used only to purchase goods and services from the spa. The Pennsylvania Supreme Court has not ruled on the question of whether separate transactions may be collapsed in order to bring them within the scope of Pennsylvania's installment protection statutes.[8]

Even if *Iron and Glass Bank* correctly states Pennsylvania law, it is not clear that its reasoning should apply to the loans at issue in this case. There, the court stressed that the underlying transaction was of a kind typically structured as an installment sale contract. *Iron and Glass Bank* at 423. The court was motivated by the desire to prevent unscrupulous sellers and lending institutions from removing sales from the protection of the statute by structuring them as two separate transactions. That rationale does not apply in this case. The student loans at issue are structured as two separate transactions as a matter of federal law. Students generally obtain educational loans from an "eligible lender" defined as "a national or State chartered bank, a mutual savings bank, a savings and loan association, a stock savings bank, a trust company, or a credit union ..." 20 U.S.C. § 1085. While a school may be an "eligible lender" under certain circumstances, 20 U.S.C. § 1085(d)(2)–(5), the clear preference of the HEA is that loans be made by separate lending institutions. The plaintiff here alleges that the school performed certain functions associated with the lender, similar to those performed by the sellers in *Iron and Glass Bank*. However, in this case, the HEA itself, and not any unscrupulous conduct by the seller or lender, removes the loans from the scope of the GSISA. Accordingly, plaintiff's claim under the GSISA will be dismissed.[9]

Plaintiff also alleges that she may assert her school-based defenses against all holders of her note pursuant to 16 C.F.R. § 433.2. This regulation, commonly known as the Federal Trade Commission Holder Rule ("FTC Holder Rule"), makes it an "unfair or deceptive act or practice," under the Federal Trade Commission Act, 15 U.S.C.

---

8. In *Anderson v. Automobile Fund*, 258 Pa.Super. 1, 391 A.2d 642 (1978), the Pennsylvania Superior Court addressed the question of whether separate sale and loan transactions could come within the scope of the Motor Vehicle Sales Finance Act, 69 Pa.Stat.Ann. § 601 et seq. The six members of the court who participated in the decision divided equally on the issue, thereby affirming the decision of the Court of Common Pleas in favor of the lender. Since there was no majority opinion, no precedent was established.

In *In re Brown*, 134 B.R. 134 (Bankr.E.D.Pa. 1991), the court found that under Pennsylvania law a separate sale and loan could be considered one transaction for purposes of the Pennsylvania Home Improvement Finance Act, 73 Pa.Stat. Ann. § 500–101, et seq.

9. Defendant contends that plaintiff may not rely on the GSISA because she did not assert a claim under this statute in the complaint. Because of our resolution of the merits of the claim, we need not address this question.

§ 41 et seq., for a seller, to accept payment or to receive a contract when the contract does not contain the following notice:

> Any holder of this consumer-credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the procedures hereof.

The loans in question in this case did not contain the required language. Even assuming that the FTC Holder Rule applies to student loan transactions,[10] plaintiffs have no right against subsequent holders of the loans under federal law, if the required language is omitted. Rights against subsequent holders are contractual and can only be enforced if the required language is included. *Jackson v. Culinary School of Washington,* 788 F.Supp. at 1233; *Vietnam Veterans of America Inc. v. Guerdon Industries, Inc.,* 644 F.Supp. 951, 964–65 (D.Del.1986). The rule does not afford plaintiffs any relief and does not grant private parties a cause of action for the failure to include the notice. Enforcement of the Federal Trade Commission Act and therefore the FTC Holder Rule is left to the FTC. *Holloway v. Bristol–Myers Corp.,* 485 F.2d 986 (D.C.Cir.1973); *Jackson* at 1233.

■ Plaintiff does not dispute that the FTC Holder Rule does not itself provide a remedy. Rather, plaintiff alleges that the knowing participation of a lender in a transaction which violates the FTC Holder Rule also violates Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UPCPL"), 73 Pa.Stat.Ann. § 201–3. Plaintiff relies for this proposition on *Iron and Glass Bank v. Franz,* 9 Pa.D. & C.3d 419, 422–23 (C.P.Allegheny Cty.1978). That case does contain language to that effect. However, it does not suggest, and plaintiff does not cite, any support for the proposition that the UPCPL applies to non-culpable parties. The UPCPL provides that consumers may sue a seller of goods or services who commits an unfair trade practice[11] but does not impose liability on parties who have not themselves committed any wrongdoing. Nor does it preserve defenses against subsequent holders of a loan. As stated above, the lender who provided plaintiff with her loans is no longer a party to this action. Plaintiff has not alleged that the Secretary had knowledge of or participated in the instant transaction and has conceded that the guaranty agency has committed no wrongdoing. Therefore, the UPCPL cannot apply to the Secretary and USAF.

■ Finally, plaintiff asserts that she can avoid enforcement of her loans because the loan agreements are contrary to Pennsylvania public policy. Specifically, plaintiff alleges that Pennsylvania public policy is undermined by enforcement of the loans of falsely certified students when the HEA provides for the discharge of these loans. Plaintiff relies for this proposition on cases in which Pennsylvania courts have recognized a mortgagee's failure to comply with HUD forbearance regulations as an equitable defense to foreclosure. *See e.g. Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 530 A.2d 919 (1987). In *Smith,* the Pennsylvania Superior Court acknowledged that the regulations did not provide a defense to foreclosure under federal law. Nonetheless, the court found that it could exercise its equity powers to prevent foreclosure where a mortgagee has not complied in good faith with the forbearance provisions of the regulations.

The present case is not analogous to *Smith.* In *Smith* the HUD regulations identified specific practices, including methods of forbearance relief which HUD considered acceptable for lending institutions to follow in servicing HUD mortgages. *Id.,* 530 A.2d at 921. In contrast, the 1992 amendments to the HEA do not define what it means for a student to be "falsely certified" or what constitutes "ability to benefit fraud." The determination of which loans fit into these categories is left to the Secretary. It is for the Secretary to define which loans are in fact

---

**10.** None of the defendants takes a position on this issue.

**11.** The UPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to mean any one or more of several enumerated practices. It also includes a catch-all provision which proscribes "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa.Stat.Ann. § 201–3.

against "public policy." Until such time as the Secretary makes those determinations, this court has no basis to conclude that the Pennsylvania courts would decline to enforce the loans at issue based on the provisions of the HEA.

## THE EXISTENCE OF AN ORIGINATION RELATIONSHIP BETWEEN THE SCHOOL AND THE LENDER DOES NOT PROVIDE PLAINTIFF WITH A CLAIM FOR RELIEF

■ Plaintiff also argues the existence of "an origination relationship" between the school and the lender as a basis for asserting her school-based defenses against the Secretary and the USAF by way of a declaratory judgment action. An "origination relationship" is defined in the regulations as:

A special relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally performed by the lenders before making loans. In this situation, the school is considered to have "originated" a loan made by the lender. The Secretary determines that "origination" exists if, for example—

(1) A School determines who will receive a loan and the amount of the loan; or

(2) The lender has the school verify the identity of the borrower or complete forms normally complete by the lender.

34 C.F.R. § 682.200 (1992).

■ The regulations themselves do not create a cause of action based on the existence of an origination relationship. They merely impose certain due diligence obligations on lenders who have an origination relationship with a school. 34 C.F.R. § 682.-206(a)(2). Plaintiff relies on an alleged policy of the Secretary to the effect that where a loan arises from an origination relationship between a lender and a school, the Secretary will honor any defenses to collection which the student may have against the school, will abstain from collecting such loans, and will not "encourage or require" the guaranty agency to enforce the loan.[12]

■ The question arises whether this alleged policy is binding on third parties such as USAF, the guaranty agency. In *Jackson v. Culinary School of Washington*, 788 F.Supp. 1233, 1260–1263 (D.D.C.1992), the court concluded that a policy statement which had not been subjected to the notice and comment procedures required by the APA, 5 U.S.C. § 553, cannot bind third parties such as the guaranty agency. *Id.*, at 1262. The court in *Tipton v. Secretary of Educ.*, 768 F.Supp. 540 (D.W.Va.1991) came to a contrary conclusion. There, the court held that the existence of an origination relationship did not subject the lenders to the borrowers' school-based defenses, but that such defenses could be asserted against the guaranty agency. The court concluded that

inasmuch as [the guaranty agency] is, as a practical matter, the entity which holds the majority of the notes in question and is required to pursue collection activity

---

12. An example of this Policy, may be found in a letter dated May 19, 1988 from the Secretary of Education to Congressman Stephen Solarz which states:

If a loan is not legally enforceable, it is not reinsurable by the Department, and the Department would not encourage or require a lender or guaranty agency to attempt to collect such a loan. As a legal matter, however, a student who borrows under the GSL program from a third party lender remains responsible for repaying the loan even if the school closes, unless a relationship exists between the lender and the school that would make the school's failure to render educational services a defense to repayment of the loan to the lender. This kind of relationship can arise when the lender makes the school its agent for certain functions in the loan making process. The Department

has termed such an agency relationship an "origination relationship." 34 C.F.R. 682.200.

If the court finds that the school acted as an agent of the lenders and determines that the loans, for that reason, are wholly or partially unenforceable against the borrowers, the Department would honor that determination, and would regard these loans, to that extent, as not covered by reinsurance, and would neither attempt to collect them nor expect guaranty agencies to collect them.

The plaintiff also submitted a section from the November 20, 1990 Federal Register containing proposed regulations which would have codified the Secretary's position with regard to origination relationships. According to plaintiff, these regulations were tabled pending the 1992 reauthorization of the Act, and never adopted.

against the loans with due diligence, the court finds that [the guaranty agency] should likewise be held subject to the Secretary's apparent policy of non-collection. 768 F.Supp. at 570. This court finds the *Jackson* case more persuasive. Although an agency may choose to bind itself in an informal manner, it cannot regulate third parties other than by utilizing the mechanisms of the APA established for that purpose. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979). Furthermore, even if the Secretary's policy could bind the agency, the policy as embodied in the documents submitted by plaintiff does not prohibit the agency from enforcing the loans. The Secretary merely states that it would not "require or encourage" the agency to enforce the loans. Consequently, the existence of an "origination relationship" alone has no bearing on the ability of the guaranty agency to attempt to collect money due from a student.

■ Because USAF cannot be bound by the Secretary's alleged origination relationship policy, and because plaintiff has stated no independent state or federal law basis for imputing the school-based defenses against it, USAF must be dismissed. Plaintiff contends that USAF should not be dismissed from the case because, as a possible holder of plaintiff's loans, it is an "indispensable party" to the action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.[13] Defendant USAF points out correctly that this provision is a rule of procedure and as such cannot create a cause of action where one does not exist.

■ Counsel for the Secretary conceded that the Secretary intends to abide by the Department of Education's policy but asserted that plaintiff has misconstrued the nature and effect of the policy. Specifically, the Secretary asserts that the existence of an origination relationship does not provide plaintiff with additional remedies. Rather the policy is merely a specific example of the

Secretary's general position that it will not reinsure and will not enforce loans which are unenforceable as a matter of state law. Consequently, if an agency relationship exists under state law which would make the loan unenforceable by the lender, the Secretary will not reinsure the loan and will not seek to enforce it.

Regardless of the exact nature of the policy, it does not afford plaintiff relief. The Secretary has not indicated that the Department of Education would actively discharge loans based on the existence of an origination relationship but merely that the Secretary would not seek to enforce such loans. Although there is some confusion as to which party actually holds plaintiff's loans, the parties agree that the Secretary does not. As explained above, the original lender is no longer a party to this suit. Furthermore, plaintiff has stated no claim which would permit this court to prevent USAF, the guaranty agency, from attempting to enforce her loans, when and if it becomes the holder. Consequently, a declaratory judgment against the Secretary will not prevent the enforcement of plaintiff's loans, and therefore not provide the relief which plaintiff seeks.

■ The decision to grant declaratory judgment is discretionary with the court. *Public Service Commission of Utah v. Wycoff Co.,* 344 U.S. at 241, 73 S.Ct. at 239. Whether or not the judgment will settle the controversy is one of the principal criteria which guides the exercise of judicial discretion in this area. 6A Moore's Federal Practice, ¶ 57.08[4], p. 57–47.; *Wycoff,* 344 U.S. at 243, 73 S.Ct. at 240. A declaratory judgment action is not appropriate unless the case presents a controversy, "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Wycoff,* 344 U.S. at 243, 73 S.Ct. at 240. The court should not grant declaratory judgment unless such action will serve a useful purpose, actually remedying or

---

**13.** Rule 19(a) of the Federal Rules of Civil Procedure provides in relevant part:
  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties . . .

preventing the harm to plaintiff. *Id.*, 344 U.S. at 245, 73 S.Ct. at 241. In this case, because a declaratory judgment against the Secretary would not settle the controversy or afford plaintiff complete relief, the court will exercise its discretion not to proceed with such an action.

## CONCLUSION

Accordingly, the motions of the Secretary of Education and of USAF to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted.