**Eddie BARTELS, et al., Plaintiffs,**

v.

**ALABAMA COMMERCIAL COLLEGE, Inc., d/b/a Riley Training Institutes of Savannah, Waycross, and Brunswick, Georgia, Richard Riley, Secretary, U.S. Department of Education, the Higher Education Assistance Foundation, and the Georgia Higher Education Assistance Corporation, and Student Loan Marketing Association, Defendants.**

**Civil Action No. CV294–150.**

United States District Court,
S.D. Georgia,
Brunswick Division.

Dec. 15, 1995.

Murphy Alan Cooper, Georgia Legal Services, Savannah, GA, Lisa Jane Krisher, Georgia Legal Services, Atlanta, GA, Jon P. Smith, Brunswick, GA, for Eddie Bartels, Alethia Pinkney, Shirley Travis, Iris Hull, Sharon Days, Leonie Smart, Mary L. Manley, Doretha Young, Ruby C. Carr, Alfreda C. Bantum, and Octavis Roberson.

Murphy Alan Cooper, Georgia Legal Services, Savannah, GA, Lisa Jane Krisher, Georgia Legal Services, Atlanta, GA, for Iris Miller, Linda Mosley, and Michelle Cross.

Murphy Alan Cooper, Georgia Legal Services, Savannah, GA, Jon P. Smith, Brunswick, GA, for Vera Burson.

Melissa Stebbins Mundell, Savannah, GA, Sean W. Colligan, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, Delora L. Kennebrew, United States Attorney, Savannah, GA, Jeannine R. Lesperance, U.S. Department of Justice, Washington, DC, for Richard Riley.

Sean W. Colligan, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, Delora L. Kennebrew, United States Attorney, Savannah, GA, Jeannine R. Lesperance, U.S. Department of Justice, Washington, DC, for Higher Education Assistance Foundation.

James Martin Lachance, Charles S. Johnson, III, Peterson, Dillard, Young, Asselin, Powell & Wilson, Atlanta, GA, for Georgia Higher Education Assistance Corporation.

Lisa Sue Godbey, Gilbert, Harrell, Gilbert, Sumerford & Martin, P.C., et al., Brunswick, GA, for Student Loan Marketing Association.

### ORDER

ALAIMO, District Judge.

Defendants, Student Loan Marketing Association, the Higher Education Assistance Foundation, the Georgia Higher Education Assistance Corporation, and the Secretary of the United States Department of Education, Richard Riley (collectively referred to as the "non-school Defendants"), have each filed a Motion to Dismiss Plaintiffs' amended complaint. For the reasons discussed below, the non-school Defendants' motions will be **GRANTED.**

### FACTS

Plaintiffs are a putative class of former students of Alabama Commercial College, Inc., d/b/a the Riley Training Institutes of Savannah, Waycross, and Brunswick, Georgia. From September of 1988 to November of 1990, these schools allegedly recruited the Plaintiffs, induced them to sign up for federally guaranteed student loans, and then failed to provide the promised quality of education or job placement.

Plaintiffs' amended complaint names as Defendants, Alabama Commercial College, Inc. d/b/a Riley Institute ("Riley Institute"), the Secretary of the United States Department of Education, Richard Riley ("Secretary Riley"), the Higher Education Assistance Foundation ("HEAF"), the Georgia Higher Education Assistance Corporation ("GHEAC"), and the Student Loan Marketing Association ("Sallie Mae"). Riley Institute is a now-defunct corporation that provided vocational training in Southeast Georgia. Secretary Riley is responsible for implementing and overseeing the Guaranteed Student Loan Program (now called the Federal Family Education Loan Program, or "FFEL") and other related educational programs. GHEAC and HEAF guaranteed some of the Plaintiffs' student loans and are allegedly assignees of some of these loans. Sallie Mae is in the business of buying student loans in the secondary market and currently holds some of those loans.

In their amended complaint, Plaintiffs seek rescission of their loan contracts, declaratory and injunctive relief, actual and punitive damages, attorneys' fees and costs. In Count One of their complaint, Plaintiffs are suing Riley Institute, GHEAC, HEAF, and Sallie Mae for fraud. In Counts Two and Three, Plaintiffs are suing all the Defendants for breach of contract and for violations of the Uniform Deceptive Trade Practices Act. In Count Four, Plaintiffs are suing Riley Institute, GHEAC, and HEAF for the tort of ex delicto contract breach. Finally, in Count

Five, Plaintiffs are suing Secretary Riley for Violations of Due Process.

### DISCUSSION

#### I. The Standard for Evaluating a Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint. In essence, the movant says, "Even if everything you allege is true, the law affords you no relief." Consequently, in determining the merits of a 12(b)(6) motion, a court must assume that all of the factual allegations of the complaint are true, *e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990), and construe them in the light most favorable to the plaintiff. *E.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991).

#### II. Can Count One of Plaintiffs' Complaint Survive Defendants' Motions to Dismiss?

■ In Count One of their complaint, Plaintiffs assert a cause of action of fraud against Riley Institute, GHEAC, HEAF, and Sallie Mae. Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must state "the circumstances of fraud ... [in his complaint] ... with particularity." Fed. R.Civ.Pro. 9(b). A complaint satisfies Rule 9(b) if it alleges the date, time, or place of the alleged fraud or if it alleges alternative means sufficiently detailed to connect the allegations to the defendant[s]. *Durham v. Business Management Associates,* 847 F.2d 1505, 1511 (11th Cir.1988). Plaintiffs do not cite any direct actions of GHEAC, HEAF, or

Sallie Mae, but, rather, only describe the allegedly fraudulent actions of Riley Institute. In an attempt to connect Defendants, GHEAC, HEAF, and Sallie Mae, to the conduct of Riley Institute, Plaintiffs claim that 1) Riley Institute and GHEAC, HEAF, and Sallie Mae stood in an origination relationship under 34 C.F.R. § 682.200, 2) that the promissory notes signed by Plaintiffs implicitly include the notice required by the FTC Holder Rule (the "FTC Holder Rule notice"), 3) that GHEAC, HEAF, and Sallie Mae are assignees of an integrated, mutually dependent contract with Riley Institute and its students, and 4) that GHEAC, HEAF, and Sallie Mae engaged in an agency/joint venture relationship with Riley Institute whereby the non-school Defendants aided and abetted Riley Institute in the procurement of Plaintiffs' student loans.

#### A. Would the Existence of an Origination Relationship Allow Count One to Survive Defendants' Motion to Dismiss?

■ Plaintiffs first predicate their fraud count upon an alleged origination relationship under 34 C.F.R. 682.200 between the school and the lenders.[1] Plaintiffs claims that such a relationship would enable them to assert against GHEAC, HEAF, and Sallie Mae the defenses to the student loan contract that could be asserted against Riley Institute.

In support of their assertion, Plaintiffs cite statements of the Secretary of Education from 1988 to 1992 to Congressmen and in briefs submitted to various courts. In these statements, the Secretary stated that when an origination relationship existed and when the loans were wholly or partially unenforceable against the student borrowers, the Department of Education's policy

---

1. The federal regulations effective when Plaintiffs obtained their loans defined an origination relationship to be:

 A special relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally performed by lenders before making loans. In this situation, the school is considered to have "originated" a

loan made by the lender. The Secretary [of Education] determines that "origination" exists if, for example—

 (1) A school determines who will receive a loan and the amount of the loan; or
 (2) The lender has the school verify the identity of the borrower or complete forms normally completed by the lender.
34 C.F.R. § 682.200 (1989).

was to forbear enforcement of the loans. *See e.g.,* Letter from Dept. of Educ. Deputy Assistant Secretary for Student Fin. Assistance, Dewey L. Norman, to W.N. Kirby, Comm'r of Educ., Texas Educ. Agency, of 7/17/88 (Pl['s] Response at Ex. 11); Letter from Dept. of Educ. Acting Assistant Secretary Kenneth Whitehead, to Congressman Stephan J. Solarz, 5/19/88 (Pl['s] Response at Ex. 10); *Armstrong v. Accrediting Council,* 832 F.Supp. 419, 433 (D.D.C.1993) (describing Secretary's Brief in Support of its Motion to Dismiss); *Williams v. Nat'l Sch. of Health Technology,* 836 F.Supp. 273, 284–85 (E.D.Pa.1993) (same).

■ While this is an issue of first impression in the Eleventh Circuit, courts in other jurisdictions have held that such a theory cannot be used against third parties like GHEAC, HEAF, and Sallie Mae. In reaching its decision, these courts have reasoned that the Secretary's statements were never promulgated as a rule under § 553 of the Administrative Procedure Act ("APA"). *See, e.g., Williams,* 836 F.Supp. at 284–85 (E.D.Pa.1993). The Court agrees, for federal agencies must comply with the APA's procedural requirements for rulemaking. *Chrysler Corp. v. Brown,* 441 U.S. 281, 303, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979) (*citing Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974)). "Although an agency may choose to bind itself in an informal manner, it cannot regulate third parties other than by utilizing the mechanisms of the APA." *Williams,* 836 F.Supp. at 285. Thus, the existence of an origination relationship between the school and the lenders would not allow Count One to survive the Defendants' Motion to Dismiss.

**B. Is the Notice Required by the FTC Holder Rule Implicitly Included in the Promissory Notes Signed by Plaintiffs?**

■ Plaintiffs next claim that Defendants, GHEAC, HEAF, and Sallie Mae, may be sued for fraud because the notice required by 16 C.F.R. § 433.2, the Federal Trade Commission Holder Rule (the "FTC Holder Rule"), is implicitly included in their promissory notes.[2] Even assuming that the FTC Holder Rule applies to student loan transactions, a plaintiff has no rights under the rule if the notice is omitted from the contract. *See Armstrong v. Accrediting Council,* 832 F.Supp. 419, 432 (D.D.C.1993); *Williams,* 836 F.Supp. at 283 (*citing Vietnam Veterans of America Inc. v. Guerdon Industries, Inc.,* 644 F.Supp. 951, 964–65 (D.Del.1986)). Furthermore, there is no private cause of action under the FTC Holder Rule. *Williams,* 836 F.Supp. at 283; *Heastie v. Community Bank of Greater Peoria,* 727 F.Supp. 1133, 1139, *opinion supplemented,* 727 F.Supp. 1140 (N.D.Ill.1989). Rather, enforcement of the rule is the sole province of the Federal Trade Commission. *Holloway v. Bristol–Myers Corp.,* 485 F.2d 986, 1002 (D.C.Cir.1973).

■ Plaintiffs nonetheless argue that state law implies the FTC Holder Rule notice into their promissory notes with the Defendants. In support of their claim, they cite the legal proposition that "laws which exist at the time and place of making of a contract, enter into and form a part of it." *See Walter v. Orkin Exterminating Co.,* 192 Ga.App. 621, 622, 385 S.E.2d 725 (1989) (citations omitted). This argument fails because no court in this nation has found that its state's laws implicitly include the notice in contracts made in that state or under its laws.[3] Accordingly, the

---

2. The FTC Holder Rule states that "it is an unfair or deceptive act or practice" within the meaning of section 5 of [the Federal Trade Commission Act, 15 U.S.C. § 41 et seq.,] for a seller, directly or indirectly, to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:
NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
16 C.F.R. § 433.2.

3. Although it is not helpful in this action, Congress has since attempted to afford relief to students who obtain loans after enrolling in questionable schools. Title 20, Section 1082(m)(1), of the United States Code, now requires the Department of Education to develop a common loan

FTC Holder Rule is not implicitly included in Plaintiffs' student loan contracts.

### C. Are GHEAC, HEAF, and Sallie Mae Assignees of an Integrated, Mutually Dependant Contract?

█ Plaintiffs also assert that their fraud claim is supported by GHEAC, HEAF, and Sallie Mae's alleged status as assignees of an integrated, mutually dependent contract with Riley Institute and its students. No court in the nation has recognized this theory in the student loan context. Neither should this Court, for under the Higher Education Act ("HEA"), student loans are structured as two separate transactions. *Williams*, 836 F.Supp. at 282 (*citing* 20 U.S.C. § 1085). Indeed, one transaction is a contract between the school and the student for educational services, and another transaction is between the student and the lender for financial services.

█ Furthermore, under Georgia law, a mutually dependant contract must be between the same parties. *Moran v. NAV Services*, 189 Ga.App. 825, 826, 377 S.E.2d 909 (1989). In this case, the contracts claimed by Plaintiff to be mutually dependent are not between the same parties. For instance, there are contracts between Riley Institute and the students, as well as contracts between the students and the lenders. There are also guaranty agreements between the lenders and the guaranty agencies, GHEAC and HEAF (the "guaranty agencies"), whereby GHEAC or HEAF guarantees to the lenders that the loans will be paid. Additionally, there are reinsurance agreements between Secretary Riley and the guaranty agencies whereby Secretary Riley promises to reimburse the guaranty agencies as long as they attempt, with due diligence, to collect on a defaulted loan. Thus, for these reasons, GHEAC, HEAF, and Sallie

Mae are not assignees of an integrated, mutually dependent contract.

### D. Can Plaintiffs' Assertion of an Agency/Joint Venture Relationship Allow Count One of the Amended Complaint to Survive Defendants Motions to Dismiss?

█ Plaintiffs' final theory in support of their Count alleging fraud is that GHEAC, HEAF, and Sallie Mae engaged in an agency/joint venture relationship whereby the non-school defendants aided and abetted Riley Institute in the procurement of student loans. Plaintiffs state that GHEAC, HEAF, and Sallie Mae acted as agents of Riley Institute by "obtaining the students' signatures on the student loans." (Pl[s'] amended compl. at ¶ 119). Plaintiffs further state that GHEAC, HEAF, and Sallie Mae "benefitted from their agent/joint venturers' actions in that they received payments for the federally guaranteed loans they made to the students." (Pl[s'] amended compl. at ¶ 120).

The close relationship alleged by Plaintiffs is mandated by the HEA and federal law. *See, e.g.,* 20 U.S.C. § 1078(a)(2) (requiring a school to provide information to the lender concerning a student's estimated cost of attendance, his estimated financial assistance and a schedule for the disbursement of loan proceeds); 20 U.S.C. § 1077a (describing permitted interest rates); 20 U.S.C. § 1092 (requiring schools to inform students about the details of federal student loans). As such, Plaintiffs' claim of an agency/joint venture relationship conflicts with the purposes and procedures of the HEA and is, thus, preempted by it. *See Tipton v. Secretary of Educ. of U.S.*, 768 F.Supp. 540, 558 (S.D.W.Va.1991) (finding a plaintiff's claim preempted by 20 U.S.C. § 1078(a)(2)).[4] Thus, Plaintiffs cannot assert an agency/joint venture relationship.

application form and promissory note to be used by "[t]he Secretary, in cooperation with representatives of guaranty agencies, lenders, and all organizations involved in student financial assistance." 20 U.S.C. § 1082(m)(1) (1995 Supp.). This form, which went into effect in 1994, incorporates the notice required by the FTC Holder Rule. *See Bartels v. Alabama Commercial College*, 54 F.3d 702, 705 n. 3 (11th Cir.1995).

**4.** Because the Court will dismiss Plaintiffs' fraud claim to the extent it is asserted against GHEAC, HEAF, and Sallie Mae, it is unnecessary to consider Sallie Mae's arguments concerning the Statute of Limitations. Neither does the Court need to consider GHEAC's argument that promises relating to future events are not actionable.

For the above reasons, Plaintiffs have alleged no theory that connects GHEAC, HEAF, or Sallie Mae to Riley Institute's allegedly fraudulent acts. Consequently, Count I cannot survive GHEAC's, HEAF's, and Sallie Mae's Motions to Dismiss.

### III. Can Count Two of Plaintiffs' Amended Complaint, Alleging Breach of Contract, Survive Defendants' Motion to Dismiss?

In Count Two of their amended complaint, Plaintiffs are suing Riley Institute, GHEAC, HEAF, Sallie Mae, and Secretary Riley for breach of contract. As a preliminary matter, a breach of contract action cannot be maintained against a defendant unless there is a contract. Here, there is no contract between the Plaintiffs and GHEAC, HEAF, Sallie Mae, or Secretary Riley. Plaintiffs beg the Court to find a contract exists, based on theories of an origination relationship forbearance policy, of an implicit inclusion in their promissory notes of the FTC Holder Rule notice, of an integrated, mutually dependant contract theory, and of an agency/joint venture theory. Because the Court has already dismissed those theories as they relate to GHEAC, HEAF, and Sallie Mae, the theories against these same Defendants are also dismissed in this Count. In like manner, in relation to their suit against Secretary Riley, Plaintiffs' theories of an implied FTC Holder Rule notice, of an integrated, mutually dependent contract, and of an agency/joint venture theory are identical to the theories used against GHEAC, HEAF, and Sallie Mae. Plaintiffs' origination relationship forbearance theory, however, is different from that asserted against GHEAC, HEAF, and Sallie Mae because Plaintiffs intend for the Secretary to be bound by his own assertions. Thus, it only needs to be determined whether Secretary Riley can be sued for breach of contract under Plaintiffs' theory of an origination relationship forbearance policy.

As stated previously, from 1988 to 1992, the Secretary of Education made statements in letters and in memoranda to courts that when an origination relationship existed and when the loans were wholly or partially unenforceable against the student borrowers, the Department of Education would not seek enforcement of a student loan. At most, these assertions were an informal policy,[5] for only substantive rules, promulgated according to § 553 of the APA, have the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977); *Smith v. Russellville Production Credit Ass'n*, 777 F.2d 1544, 1547–48 (11th Cir.1985). In this regard, this case is very similar to the decision of the former Fifth Circuit, Unit B, in *United States v. Harvey*, 659 F.2d 62 (5th Cir. Unit B, October 15, 1981).[6] In *Harvey*, the appellants sought to enjoin the foreclosure of deeds used as security in a loan with the Veterans Administration ("VA"). In support of their contention, the appellants argued that the VA failed to service loan accounts properly, according to its manual. *Id.* The court found that the VA manual was merely an informal policy and, consequently, did not "create substantive rights in the mortgagor enforceable in federal court." *Id.* at 65–66. Later, in *Bright v. Nimmo*, 756 F.2d 1513, 1516 (11th Cir.1986), the Eleventh Circuit applied the reasoning of *Harvey* to find that the VA manual did not confer a private cause of action against the Veterans Administration and/or a private lender. The instant case is very similar to the actions in *Harvey* and in *Bright,* in that it concerns an informal policy and the issue of whether that policy may be used in defense of a loan obligation. It only follows, then, that the Secretary's assertion may not be used to cancel Plaintiffs' student loan debts.

Further, contrary to Plaintiffs' warning, the Court's holding in the present action does

---

5. Plaintiffs argue that the Secretary's assertions were more than an informal policy because, at one time the Department of Education intended to codify it. *See* 55 Fed.Reg. 48324, 48327 (Nov. 20, 1990). The Department, however, later decided not to codify the policy. *See* 57 Fed.Reg. 60280, 60304 (Dec. 18, 1992).

6. Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir. 1982).

not allow Secretary Riley to disregard his own policies. The Secretary's policy was that the Department of Education would refrain from trying to enforce unenforceable loans, not that an origination relationship creates a private cause of action for breach of contract. *See Jackson v. Culinary Sch. of Washington,* 27 F.3d 573, 585 (D.C.Cir.1994), *vacated on other grounds,* — U.S. —, 115 S.Ct. 2573, 132 L.Ed.2d 824 (1995).[7] Thus, an origination relationship forbearance theory cannot be asserted against Secretary Riley. And Count Two, alleging breach of contract cannot survive Secretary Riley, GHEAC, HEAF, and Sallie Mae's Motions to Dismiss.

## IV. *Can Count Three of Plaintiffs' Amended Complaint, Alleging Violations of the Uniform Deceptive Trade Practices Act, Survive Defendants' Motions to Dismiss?*

 Plaintiffs claim that Defendants violated the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10–1–371 *et seq.* This Act, however, does not address the situation at bar. Rather, it is designed to remedy unfair trade practices among competitors by regulating the naming, advertising and promotion of goods and services. *See* O.C.G.A. § 10–1–371 *et seq.; Boynton v. State Farm Mutual Automobile Insurance Company,* 207 Ga. App. 756, 757, 429 S.E.2d 304 (1993).[8]

## V. *Can Count Four, Alleging an Ex Delicto Contract Breach, Survive Defendants' Motions to Dismiss?*

 In Count Four of their amended complaint, Plaintiffs assert that Defendants committed an Ex Delicto Contract Breach. In such an action, however, it is necessary that there be a contract between a defendant and a plaintiff. *See Orkin Exterminating Co. v. Stevens,* 130 Ga.App. 363, 365, 203 S.E.2d 587 (1973). Here, there is no contract between Plaintiffs and Defendants, GHEAC, HEAF, and Sallie Mae, and, accordingly, Count Four cannot survive GHEAC's, HEAF's, and Sallie Mae's Motions to Dismiss.[9]

## VI. *Can Count Five, Alleging that Secretary Riley Violated Plaintiffs Due Process Rights, Survive the Secretary Riley's Motion to Dismiss?*

 In their final Count, Plaintiffs seek declaratory and injunctive relief for Violations of Due Process. Secretary Riley claims that Plaintiffs' claim is barred by the HEA's anti-injunction provision contained in 20 U.S.C. § 1082(a)(2).[10] Courts have interpreted this "anti-injunction" provision to bar injunctive relief unless the Secretary has exceeded the scope of his authority. *See Canterbury Career Sch., Inc. v. Riley,* 833 F.Supp. 1097, 1103 (D.N.J.1993). Plaintiffs have not alleged that Secretary Riley has exceeded his authority and, thus, Plaintiffs' claim for injunctive relief against the Secre-

---

**7.** Because the Court will dismiss Plaintiffs' breach of contract claim against GHEAC, HEAF, Sallie Mae, and Secretary Riley, it need not consider GHEAC's argument that consideration was received. Neither does the Court need to consider GHEAC's argument that the conditions for rescission are not present.

**8.** In order to show that Defendants, GHEAC, HEAF, Sallie Mae, and Secretary Riley, violated the Uniform Deception Trade Practices Act, Plaintiffs claim that the Defendants aided and abetted Riley Institute, that these same Defendants failed to ensure placement of the FTC Holder Rule notice in the consumer contracts, that they failed to comply with the HEA, that they failed to comply with the Georgia Proprietary School Act, that they misrepresented the quality of their goods and services, and that Secretary Riley did not comply with the Emergency Unemployment Compensation Act. The

Court will not address these theories because it grants GHEAC, HEAF, Sallie Mae, and Secretary Riley's Motions to Dismiss Count Three of Plaintiffs' Amended Complaint, alleging violations of the Uniform Deceptive Trade Practices Act.

**9.** Plaintiffs allege that Defendants, GHEAC, HEAF, and Sallie Mae, committed an ex delicto contract breach because they failed to ensure placement of the FTC Holder Rule in the student loan documents. Since Count Four, asserting an ex delicto contract, is dismissed against GHEAC, HEAF, and Sallie Mae, the Court will not consider Plaintiffs' theory.

**10.** Section 1082(a)(2) states in pertinent part:

> [N]o attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary [of Education] or property under the Secretary's control.
> *20 U.S.C. § 1082.*

tary is barred by 20 U.S.C. § 1082(a)(2). Additionally, Plaintiffs' claims for declaratory relief is also barred by § 1082(a)(2) because it is apparent from Plaintiffs' complaints and briefs that Plaintiffs only seek to enjoin the Secretary from collecting on their student loans. *See Expedient Services, Inc. v. Weaver,* 614 F.2d 56, 58 (5th Cir.1980).[11,12] Accordingly, Count Five cannot survive Secretary Riley's Motion to Dismiss.

## VII. *Do Plaintiffs Have a Cause of Action Under the Higher Education Act?*

 Throughout Plaintiffs' amended complaint are references to the Higher Education Act. After analyzing the factors articulated in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), it is clear that there is no private cause of action under the HEA. The four factors articulated in *Cort* are

> 1) whether the plaintiffs constitute "one of the class for whose especial benefit the statute was enacted;" 2) whether there is "any indication of legislative intent, explicit or implicit, either to create a remedy or to deny one;" 3) whether inferring a private right of action would be "consistent with the underlying purposes of the legislative scheme;" and 4) whether the cause of action "is traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law."

*Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. In determining whether a private cause of action exists, the primary inquiry is Congressional intent. *Northwest Airlines Inc. v. Transport Workers Union of America, AFL–CIO,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

 Clearly the HEA was enacted to benefit plaintiffs as former students attend-

ing a post-secondary institution. However, that is not the end of the inquiry, for consideration under the other three factors reveals that a private right of action should not be implied. The second *Cort* factor is an inquiry into congressional intent. When a statute provides detailed administrative remedies, there is a presumption that Congress did not intend to create a private cause of action but, rather, that it provided precisely the remedies it considered appropriate. *See Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (citations omitted). In this case, Congress has provided a detailed regulatory scheme. *See* 34 C.F.R. §§ 668.84 *et seq.;* 20 U.S.C. §§ 1070(b), 1071, 1082, 1094 (delegating to the Secretary broad enforcement responsibilities). Thus, it can be inferred that Congress did not intend to create a private remedy.[13] Further, any implication of a private cause of action would frustrate the legislative scheme because it would interfere with the broad enforcement powers of the Secretary. *See L'ggrke v. Benkula,* 966 F.2d 1346, 1348 (10th Cir.1992). Similarly, by applying the fourth factor, it is apparent that no private right of action exists. A reading of Plaintiffs' complaint reveals causes of action for fraud, breach of contract and violations of Georgia statutes, all areas which are "traditionally relegated to state law." *See Cort,* 422 U.S. at 78, 95 S.Ct. at 2088.

Although the Court reaches this decision through its own analysis, it is important to note that an overwhelming majority of Courts who have considered this issue have also found that there is no private cause of action under the HEA. *See L'ggrke v. Benkula,* 966 F.2d 1346, 1348 (10th Cir.1992); *Moy v. Adelphi Institute, Inc.,* 866 F.Supp. 696, 705 (E.D.N.Y.1994); *Williams v. Nat'l*

---

**11.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**12.** Since the Court will dismiss Count Five of Plaintiffs' Amended Complaint, it need not consider Secretary Riley's arguments concerning Ripeness, Standing, and the Merits of Plaintiffs' Due Process Claim.

**13.** It might be argued that Congress intended to create a private cause of action in 20 U.S.C. 1082(a)(2), which allows the Secretary of Education, with some exceptions, to "sue and be sued." Such provisions are to be construed only as a jurisdictional grant and cannot be used to imply a private cause of action. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976).

*Sch. of Health Technology,* 836 F.Supp. 273, 278 (E.D.Pa.1993); *Hudson v. Academy of Court Reporting, Inc.,* 746 F.Supp. 718, 721 (S.D.Ohio 1990); *Graham v. Security Sav. and Loan,* 125 F.R.D. 687, 693 (N.D.Ind. 1989), *aff'd sub nom Veal v. First American Sav. Bank,* 914 F.2d 909 (7th Cir.1990); *St. Mary of the Plains v. Higher Ed. Loan Program,* 724 F.Supp. 803, 808 (D.Kan.1989). Thus, for all of the above reasons, the Court hold that Plaintiffs do not have a cause of action under the Higher Education Act.

## CONCLUSION

For the above reasons, the Motions of Defendants, GHEAC, HEAF, Sallie Mae, and Secretary Riley, to Dismiss Plaintiffs' Amended Complaint are GRANTED.[14] Accordingly, the Clerk is directed to enter a judgment dismissing Plaintiffs' claims against all Defendants, excepting Riley Institute.

**SO ORDERED.**

---

**14.** Because the Court grants these Defendants' motions, it need not consider Secretary Riley's argument that Plaintiffs' Amended Complaint is, in essence, educational malpractice.