**Vanessa ARMSTRONG, Plaintiff,**

v.

**ACCREDITING COUNCIL FOR CONTINUING EDUCATION & TRAINING, INC., et al., Defendants.**

**Civil Action No. 91–3135(RCL).**

United States District Court,
District of Columbia.

April 10, 1997.

Alan Butler Morrison, Michael Edward Tankersley, Brian Wolfman, Washington, DC, for Plaintiff.

Kenneth John Ingram, Mary Gillen Fenske, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on the summary judgment motions of defendant Accrediting Council for Continuing Education & Training (ACCET) and plaintiff Armstrong. Upon consideration of the parties' written submissions and the relevant law, for the reasons set forth below, the court will deny both plaintiff Armstrong's and defendant AC-CET's motions.

## I. Factual Background

Plaintiff Armstrong, together with members of the certified class, are former students of the National Business School (NBS), a vocational school located in the District of Columbia before its closing in 1990. Plaintiff filed this suit in December of 1991 naming several defendants and asserting several causes of action. Plaintiff maintains that

defendant ACCET is liable for fraud because ACCET extended the accreditation of NBS without any knowledge of whether the school met ACCET's standards for accreditation.

The underlying facts of the relationship of ACCET and NBS are undisputed. NBS applied to ACCET[1] for accreditation in 1985. Prior to 1985, NBS had been accredited by the Association of Independent Colleges and Schools, but was seeking a new accrediting agency for reasons unrelated to this suit. ACCET granted NBS an accreditation that was to expire after two years. Pl's Exhibit 14, A–3, Minutes of the Accrediting Commission, April 3–5, 1985. The organization's regulations permitted accreditations to be granted for periods of one to five years. During the Commission's discussion, ACCET reviewers expressed several concerns about the Washington, D.C. branch of NBS, and required an interim report from NBS to address the areas of concern which included the curriculum, the instructional materials, the clarity of the school's mission statement, and the school's financial status. *Id.* According to ACCET, interim reports are required of schools when a situation exists that suggest a school "runs a high risk of not maintaining the desired level of quality." Pl's Exhibit 5, ACCET Application for Continued Recognition, at 62–63. NBS's initial ACCET accreditation was to last until May of 1987. However, ACCET did not review any of the potential problems of NBS before the scheduled expiration and, without an examination, granted NBS a series of automatic extensions. The initial automatic extension was until November of 1987, but the accreditation was automatically extended again to March of 1988, and was automatically extended again until November of 1988, over a year and a half after NBS's original accreditation had expired. Pl's Exhibit 12, Minutes of Accrediting Commission Conference Call; Pl's Exhibit 14, A–9, Minutes of the Accrediting Commission, March, 1987, Pl's Exhibit 14, A–11, Minutes of the Accrediting Commission, November, 1987.

---

1. Prior to 1987, ACCET was known as the Council for Continuing Education and Training (CNCE).

In October of 1988, an ACCET examination team reviewed NBS to see if the school was in compliance with ACCET standards. Dft's Exhibit 3, Affidavit of Roger Williams. The Commission however extended NBS accreditation yet again until March of 1989, postponing a decision on NBS' reaccreditation so that more information could be gathered. Dft's Exhibit 3, Affidavit of Roger Williams. However, it was not until June of 1989 that the ACCET examining team again visited NBS and prepared a second report. *Id.* In July of 1989, the Accrediting Commission finally voted to deny reaccreditation. *Id.* NBS appealed, and the Commission rejected the attempt in early December of 1989. *Id.* Ultimately, there was a 31 month gap between the expiration of NBS' original accreditation and ACCET notifying the Department of Education of the denial of reaccreditation.

Named plaintiff Armstrong first became interested in NBS in June of 1988. Deposition of Vanessa Armstrong, p. 41. After an initial interview and a screening test, Armstrong enrolled in NBS and began classes in August of 1988. *Id.* Armstrong began noticing that NBS did not carry through on all of the school's promises during her first three weeks in class. *Id.* at 56–57. After the introductory instruction class, Armstrong began to notice more and more problems, and three months after beginning the program, Armstrong began voicing her concerns to the administration of the school. *Id.* at 70. In May of 1989, Armstrong, along with other students, began complaining about NBS to outside authorities, including D.C. regulatory authorities and the Department of Education. Armstrong never finished her educational program, and ultimately filed this suit.

## II. Procedural Background

Plaintiff filed this suit on December 10, 1991. In February of 1992, defendant ACCET filed a motion to dismiss for failure to state a claim upon which relief could be granted. In September of 1993, the court granted ACCET's motion to dismiss plaintiff's claim under the D.C. Consumer Protection Procedures Act, but allowed plaintiff's claims for common law fraud and misrepresentation to continue. 832 F.Supp. 419.[2] Having considered the arguments of the parties on the dismissal of the case under 28 U.S.C. 1367, the court decided to continue to exercise jurisdiction in July of 1995. A second motion to dismiss was denied in August of 1995, and a class was certified in November of 1995. The case is now before the court on the parties' cross-motions for summary judgment.

Defendant ACCET moves for summary judgment on several grounds. First, ACCET argues that plaintiff's claim is barred by the statute of limitations. Second, ACCET argues that plaintiff has failed to establish a prima facie case of fraud. Third, ACCET argues that public policy requires the court to not question ACCET's decisions regarding the accreditation of NBS. Armstrong has also moved for partial summary judgment, arguing that summary judgment is appropriate on all issues affecting the class, specifically that the elements of fraud have been established.

## III. Analysis

### A. Standard

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-mov-

---

**2.** Part of the reported opinion dismissed all but one of plaintiff's claims against the other defendants. By order dated July 25, 1995, this court modified the opinion so that all of plaintiff's claims against the other defendants were dismissed, and entered final judgment in favor of every defendant other than ACCET. Plaintiff appealed the decision dismissing the other defendants, and the Court of Appeals then vacated that portion of the opinion. 84 F.3d 1452. The section addressing ACCET was not affected by any of the later decisions.

ing party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

## B. Discussion

### 1. Prima Facie Fraud

Defendant ACCET argues that plaintiff has failed to establish a prima facie case of fraud under D.C. law. More specifically, defendant ACCET argues that plaintiff has failed to establish a single element of the five required for fraud. In her motion, named plaintiff argues that the undisputed facts show that the class has proven all five elements. The court concludes that both parties are wrong. ACCET's most significant problem is the repeated mischaracterization of plaintiff's claim. Plaintiff has never argued that the accreditation of NBS was a promise by ACCET that she would receive a perfect education. Instead, plaintiff has argued that ACCET committed common law fraud when it represented that NBS met accreditation standards when the agency did not have the knowledge to make this statement. While there are factual disputes that preclude summary judgment for the plaintiff class, the court concludes that plaintiff has established a prima facie case of fraud.

This court must turn to the law of D.C. to determine if plaintiff has a legitimate claim. However, the D.C. courts have not been faced with the legal questions and factual situation now before the court. Thus, the court is placed in the position of determining what the D.C. Court of Appeals would do. Because the D.C. courts have not adhered to the traditional elements of fraud, but have instead shown a willingness to find exceptions when appropriate, the court concludes that plaintiff has established a prima facie case of fraud under D.C. law.

■ In the District of Columbia, there are five traditional elements of fraud, each which must be established by clear and convincing evidence which is not equally consistent with either honesty or deceit: (1) a false representation, (2) in reference to a material fact, (3) made with the knowledge of its falsity, (4) with the intent to deceive, and (5) on which action is taken in reliance upon the representation. *Blake Construction Co. v. C.J. Coakley Co.*, 431 A.2d 569, 577 (D.C.1981). The D.C. courts have demonstrated a willingness to expand the meanings of these elements when appropriate situations are presented. For example, the requirement of knowledge of the falsity may be met by a showing that the statements were "recklessly and positively made without knowledge of (their) truth." *Howard v. Riggs National Bank*, 432 A.2d 701, 706 (1981). Using this approach of appropriate flexibility, the court concludes that plaintiff's claim should survive a motion for summary judgment.

### a. False Representation

■ In arguing that plaintiff has failed to establish this element, ACCET makes two assertions. ACCET first argues that ACCET did not make any representations to the students, and second, that plaintiff is unable to show that any representations were false.

It is true that the students learned of the accreditation through a handbook made and distributed by the school itself, and not directly from ACCET. However, it is important to note that ACCET does not deny that the accreditation was valid. In fact, ACCET both enabled and encouraged NBS to publish its accreditation. In materials published by ACCET entitled "Deriving the Most from your CNCE Accreditation," the agency suggest that schools publicize their accreditations by noting the fact on letterheads, envelopes, promotional materials, advertisements, and radio, television and space ads. Pl's Exhibit 6.

■ Furthermore, under D.C. law, parties who make representations to second parties can be liable to third parties who act on these representations if such reliance is reasonably expected. *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 991 (1980). ACCET, when asking for federal recognition, spoke of its public service function. Through the accreditation process, ACCET stated that it could

help prospective students know the good schools from the bad schools. Pl's Exhibit 9, Transcript of Advisory committee on Accreditation and Institutional Eligibility at 3–25. Thus, because ACCET encouraged the reliance of prospective students, certainly ACCET reasonably expected that some students would actually do so.

Defendant ACCET also argues that a representation that NBS was accredited cannot be false, because in fact NBS was accredited by ACCET. This argument is simplistic, and ignores the heart of the plaintiff's argument in this case. By stating that NBS was accredited, ACCET was representing that NBS met ACCET's accrediting standards. After the initial two year period expired, ACCET continued to make this representation without any knowledge of the validity of this representation other than the concerns that were expressed when NBS was first accredited.

■ Defendant ACCET also argues that plaintiff has presented no evidence that in fact NBS did not meet ACCET's standards during the interim time period. However, viewing the evidence in a light most favorable to the plaintiff, it would be improper to grant summary judgment for ACCET on this issue. In addition to the many documented complaints of plaintiff, there are also the concerns expressed by the initial examiners of NBS. When ACCET finally reached the merits of NBS' reaccreditation, ACCET concluded that NBS no longer met its standards. On this evidence, a reasonable juror could conclude that the school did not meet the ACCET standards during the period of automatic extensions.

b. Materiality

■ Defendant asserts that ACCET's statement that NBS was accredited cannot meet the materiality requirement under D.C. law because it is a representation about a third party who ultimately fails to meet the plaintiff's expectations. Such statements, ACCET argues, are not sufficient to meet the materiality requirement in a fraud claim. Because, ACCET asserts, plaintiff's claim is that ACCET somehow guaranteed she would be pleased with her education and that AC-

CET was responsible when this did not occur, D.C. law does not allow her claim.

However, defendant both mischaracterizes plaintiff's claim and relies on authority that is not supportive of the argument ACCET wishes to make. Plaintiff's claim is not that ACCET promised that NBS would meet every expectation that plaintiff might have about the education she was seeking. In contrast, plaintiff's argument is that ACCET made a representation that NBS met its accreditation standards when in fact ACCET did not know if this was the case. Thus plaintiff does not argue that the representation of accreditation was a promise about the quality of her future education. The statement of accreditation was a representation that NBS met certain standards. This representation was material because of the role it played in students' determinations about whether or not to attend NBS.

■ Even statements that involve the future conduct of third parties can be the basis of misrepresentation claims. In *Day v. Avery,* the court allowed a misrepresentation claim to proceed when the representation was simply a statement of a person's opinion and prediction about future events. 548 F.2d 1018 (D.C.Cir.1976), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977). While traditionally a prediction could not serve as the basis for a misrepresentation claim, the court recognized that there are several exceptions to the general rule. As the Court of Appeals explained, "these exceptions derive their legitimacy from circumstances that would lead the reasonable person to believe that implicit in the prediction or opinion is an assertion of fact upon which the recipient of the representation might prudently rely." *Id.* at 1025. Thus, it is reasonable for a person to act upon the representations of a speaker who owes the listener a fiduciary duty. *Id.* A second exception is when the person making the representation is basing the opinion or prediction upon facts that the listener does not have. *Id.* at 1027.

It is not hard for the court to conclude that members of the plaintiff class did not stand in parity with ACCET, or that ACCET was

basing its representation regarding NBS on facts that the class did not have. In fact, as stated before, one of ACCET's acknowledged roles was its help to prospective students. As ACCET stated in a brochure, its accreditation process "provides a means of consumer protection; it assures the public that the accredited organization delivers what it promises." Pl's Exhibit 7, Commonly Asked Questions, at 3.

**c. With Knowledge of Falsity**

■ Defendant ACCET argues that even if the accreditation statement was false, plaintiff has produced no evidence that ACCET knew of the falsity of the representation. However, under D.C. law this is not required. Under D.C. law, "knowledge of the falsity may be satisfied by showing that the statements were recklessly and positively made without knowledge of (their) truth.'" *Howard v. Riggs National Bank,* 432 A.2d 701, 706 (D.C.1981), quoting *McNabb v. Thomas,* 190 F.2d 608, 609 n. 1 (D.C.Cir. 1951).

■ Plaintiff has easily presented enough evidence of reckless and positive disregard to avoid a motion for summary judgment. After the original period of accreditation ended, ACCET continued to represent that the school was accredited, thus stating that the school met ACCET's standards for accreditation. ACCET, in fact, had no factual knowledge of this. In contrast, ACCET extended the accreditation knowing that there had been many concerns expressed during the initial accreditation process. Defendant ACCET has also presented evidence that its actions were reasonable under ACCET's regulations, and the court concludes that summary judgment is not proper for either party.

**d. Intent to Deceive**

■ Defendant ACCET argues that plaintiff is unable to provide any evidence that defendant intended to deceive plaintiff when accrediting NBS. Plaintiff argues that this element of fraud is satisfied by evidence that the party making the representation either intended or had reason to expect that the statement would be communicated to those who would be influenced by the statement. The court agrees with plaintiff's characterization of the law. See *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527, 547 (D.C.Cir.1975), *rev'd on other grounds,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). And, for the reasons previously stated, the court concludes that ACCET both intended and knew that prospective students would rely on the accreditation.

**e. Reliance**

■ Defendant ACCET argues that the record is devoid of any evidence of the named plaintiff relying on ACCET's accreditation when making her decision to attend NBS. And, defendant ACCET continues, even if Armstrong did rely on the accreditation, it was not reasonable for her to do so because she had no knowledge of ACCET or of the standards it applies when accrediting schools.

ACCET inaccurately describes the record. Armstrong has, under oath, made several statements that demonstrate she considered ACCET's accreditation of NBS when determining what school to attend. Pl's Exhibit 22, Deposition of Vanessa Armstrong. Taking the evidence in the light most favorable to the plaintiff, this is sufficient to avoid summary judgment.

Furthermore, even though Armstrong did not know about the standards ACCET applied in the accreditation process, and she had no contact with any person or document produced by ACCET prior to her enrollment in the school, the court will not conclude that her reliance was unreasonable. Defendant encouraged such reliance.

■ Taking the record in the light most favorable to ACCET, there is evidence that calls into doubt Armstrong's credibility. At one point, Armstrong states that she did not know who ACCET was until she was complaining to various agencies about her experiences at NBS even though she earlier stated her consideration of ACCET's stamp of approval in the handbook she received during her initial visit to the school. As such, it would be inappropriate to grant summary

judgment in favor of Armstrong on the issue of reliance.

## 2. Statute of Limitations

■ Defendant ACCET argues that plaintiff's claim is barred by the statute of limitations. Plaintiff began attending NBS in August of 1988, and began noticing problems with the facility within a few weeks. These problems, defendant argues, should have put her on notice that ACCET had made the alleged misrepresentations about NBS.

This court, when deciding a cause of action under state law, must apply the limitations period of the forum in which it sits. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). In the District of Columbia, allegations of fraud must be brought within three years of the time the fraud is discovered or reasonably should have been discovered. D.C.Code Ann. § 12–301(8)(1995). This suit was filed on December 10, 1991. Thus, if plaintiff discovered the alleged fraud in late August of 1988, as defendant advances, the claim would be barred.

Once again, if defendant ACCET was correct in their portrayal of plaintiff's claim as an argument that ACCET's accreditation guaranteed the plaintiff class that NBS would meet their every expectation, defendant would have a potentially successful argument because if plaintiff was arguing that the accreditation guaranteed a perfect education, then learning of anything less than perfection would be knowledge of fraud.

But, as discussed above, plaintiff's claim is not that simple. Plaintiff does not argue that the accreditation was a promise that they would receive an education that met their every concern. Instead, plaintiff contends that ACCET's accreditation was a statement that NBS's quality of education met ACCET's standards. And, ACCET continued to extend NBS' accreditation even though the organization had not investigated the school during the required time frame.

Therefore, knowledge of a few problems at the school does not give plaintiff the knowledge that ACCET had fraudulently accredited the school. Every school has problems, and plaintiff has never argued that a school which has some problems should not be accredited. And, drawing inferences in favor of the plaintiff, it is not evident from the summary judgment record when in fact plaintiff should have discovered the extent of the problems at NBS, and thus had reason to know of ACCET's alleged fraud. Thus summary judgement on this issue would be inappropriate.

Defendant ACCET attempts to rely on *Winkelman v. Blyth*, a Ninth Circuit case mentioned in a footnote by the D.C. Circuit. 518 F.2d 530 (9th Cir.1975). In this case, plaintiffs were suing their stockbrokers for fraud arising out of the stockbrokers failure to disclose their financial interests in the sale of various stocks. *Id.* The Ninth Circuit held that the statute of limitations began to run when the plaintiffs discovered the falsity of defendants' representations as to the value of the stock because this gave plaintiffs sufficient notice that they had been defrauded. *Id.* at 531. The court does not disagree with the underlying proposition that once one becomes aware of the fraud, the statute of limitations began to run. The issue is when did plaintiff become aware of the alleged fraud, and the fact that Armstrong noticed some problems three weeks into her NBS schooling is not the same as Armstrong knowing that the education she was receiving was a sham.

Plaintiff has argued that she could not known of the fraud until the closing of NBS, which occurred in 1990. The court does agree with defendant that plaintiff has not demonstrated why NBS's closing is the appropriate date. It appears that Armstrong had become convinced that her educational experiences were worthless at least by the time she dropped out of the school. At trial, both parties will have the ability to produce evidence on when it was reasonable for Armstrong to have knowledge of the fraud, which will be an issue for the decision maker to decide.

## 3. Deference, the Business Judgment Rule & Public Policy

■ Defendant ACCET argues that the court should defer to the actions of the ac-

crediting agency for several reasons. ACCET first asserts that courts, when analyzing the decisions of accrediting agencies, have traditionally applied the deferential approach embodied in administrative law. Decisions of agencies are overturned only when they are capricious or arbitrary, and in a similar manner this court should examine the actions of ACCET focusing only on whether its decisions were capricious or arbitrary. *See Chicago School of Automatic Transmissions, Inc., v. Accreditation Alliance of Career Schools and Colleges,* 44 F.3d 447 (7th Cir.1994). Defendant ACCET compares this administrative rule to the business judgment rule that is used in corporate settings. Second, ACCET argues that public policy requires that students should not be able to sue accrediting agencies when they are unhappy about the quality of education they receive.

To understand the flaws in ACCET's argument, it is again vital to understand what this case is not. This case is not a situation in which an accrediting agency, after thoughtful consideration and examination, decided to accredit a school and subsequent students are challenging the decision to accredit based on their dissatisfaction with the school. Nor is this the case of a school challenging an accrediting agency's decision to deny or withdraw accreditation. See *Wilfred Academy of Hair and Beauty Culture v. The Southern Ass'n Colleges and Schools,* 957 F.2d 210, 214 (5th Cir.1992); *Peoria School of Business v. Accrediting Council for Continuing Educ. and Training,* 805 F.Supp. 579 (N.D.Ill. 1992.) When a decision on the merits to accredit had been reached by an agency, courts have then been reluctant to enter the foray.

Here, however, the problem is that there was no decision by ACCET on the merits. ACCET did not go through the reaccreditation procedure as it was supposed to do according to its own regulations. Because ACCET did not do this, there is no decision which the court can analyze under either a deferential approach or the business judgment rule.

 Furthermore, the court refuses to hold that public policy demands that an accrediting agency escape liability for intentional or reckless misrepresentations. The court concludes that students who rely on the representation of an accrediting agency do have a cause of action against the accrediting agency if the representation was false and intentional. Public policy requires that ACCET, which has recognized and encouraged prospective students to rely on its decisions to accredit schools, be held liable for any fraudulent accreditations.

### 4. Duty

 Defendant ACCET argues throughout the pleadings that ACCET has no duty to the students, who, according to defendant, are just members of the general public because they have no relationship with ACCET. Defendant relies on *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527 (D.C.Cir.1975) *rev'd on other grounds,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). This case involved the overbooking of an airplane. As a result, Ralph Nader was bumped to another flight and was unable to attend a fundraising rally for the Connecticut Citizen Action Group (CCAG). Both Nader and CCAG sued the airlines. However, the D.C. Court of Appeals concluded that while Nader was within an identifiable class of persons that the airline intended to influence, the CCAG was far more remote to the transaction and the airline had no reason to know of CCAG's reliance.

The situation before the court is far different from than in *Nader.* Unlike Allegheny Airlines, ACCET had reason to know of the potential students' reliance. In fact, ACCET encouraged such reliance as discussed above. It is true that ACCET could not identify each of the individual plaintiffs in this case. But, this is not required.

ACCET has also pointed the court to the Ninth Circuit's unpublished affirmance of a district court's dismissal of a case brought by former students of a school against two accrediting agencies. *Kearns v. Tempe Technical Institute,* 1996 WL 713069 (9th Cir.1996). The students had alleged that two accrediting agencies had negligently accredited their school, and the district court dismissed the claim for failure to state a claim upon which

**314**

relief could be granted. In affirming this dismissal, the Ninth Circuit concluded that the accrediting agencies did not owe a duty to the students upon which a negligence action could be brought.

Again, this is not the situation before this court. Plaintiff has not brought a claim based on negligence, but on fraud. In fact, the plaintiffs in *Keams* had attempted to amend their complaint to state a cause of action for misrepresentation, but were not allowed to do so because the district court found the plaintiffs were unable to provide a factual basis for such a cause of action. Because of the different causes of action, *Keams* does not provide any support for defendant's position.

**IV. Conclusion**

Defendant ACCET refers many times to the District of Columbia case *Brantley v. District of Columbia* and concludes that because "it seems clear that an institution's own representations as to its quality are not actionable in the District of Columbia, . . ., it is hard to see how such alleged representations by an accrediting agency would be actionable." Def. Memo. in Opp. to Pl. Cross–Motion at 18, fn. 27. In *Brantley,* the D.C. Court of Appeals held that public school officials do not have an actionable duty of care in the discharge of their educational duties that would subject them to a negligence claim. 640 A.2d 181, 185. Defendant ACCET is unable to produce a case in which a court has held that a private school would not be liable for making representations that it had a program that in fact did not exist. That is the situation that is analogous to the one currently before the court. Plaintiff has alleged that ACCET made a representation that NBS met its standards for accreditation, when in fact ACCET had not investigated the school, and had reason to believe that NBS would not meet the appropriate standards. This court concludes that under D.C. law this constitutes fraud, and there is a cause of action available to the plaintiff.

A separate order shall issue today.

*ORDER*

For the reasons expressed in the Court's accompanying Memorandum Opinion, it is

ORDERED that plaintiff's motion for summary judgment is DENIED, and it is further

ORDERED that defendant ACCET's motion for summary judgment is DENIED.

SO ORDERED.